UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

APPEAL No. 21-1975
_____

JOHN A. HAWKINSON

Plaintiff-Appellant,

v.

EXECUTIVE OFFICE OF IMMIGRATION REVIEW,

Defendant-Appellee
_____

DEFENDANT-APPELLEE'S RULE 27(c) MOTION
FOR SUMMARY DISPOSITION

Pursuant to Rule 27(c) of the Local Rules of the Court of Appeals for the First Circuit, Defendant-Appellee Executive Office of Immigration Review ("EOIR" or "Defendant") moves this Court to summarily affirm the judgment entered in the district court, from which this appeal was filed by Plaintiff-Appellant John A. Hawkinson ("Hawkinson" or "Plaintiff"). This appeal arises from an order granting Defendant's Motion for Summary Judgment in its favor, finding that Defendant's search for responsive records to Plaintiff's Freedom of Information Act ("FOIA") request was adequate. *See Hawkinson v. Executive Office of Immigration Review,* No. 20-cv-12273-MPK. Because the district court

properly granted Defendant's Motion for Summary Judgment, it "clearly appear[s] that no substantial question is presented" by this appeal. Accordingly, summary disposition is warranted, and the court should affirm the judgment issued by the district court.

## I. RELEVANT BACKGROUND

### A. Facts Alleged in Complaint

Plaintiff commenced this action under FOIA, 5 U.S.C. § 552, seeking the release of certain documents and information from Defendant (the "Request"). More specifically, Plaintiff's Request was as follows: "Please produce all Board of Immigration Appeals (BIA) decision that: date from December 1, 2019, through present; and originate from the Boston, MA or Hartford, CT immigration [sic] courts; and contain the text 'alternatives to detention' or 'alternatives-to-detention.'" Add 5.[1] Plaintiff maintains that EOIR's search was inadequate because it did not retrieve one particular BIA decision that Plaintiff had in his possession at the time of his Request.

### B. District Court's Judgment in Favor of Defendant

On September 27, 2021, the district court (Kelley, MJ) issued an order granting Defendant's Motion for Summary Judgment. *See* Add. 2. In so doing,

---

[1] The following abbreviations are used in this brief: "RA" shall refer to the Record Appendix; "Add." Shall refer to the Addendum to Plaintiff's opening brief.

the district court noted that Defendant's declarations showed that it had two internal agency databases that contained signed published and unpublished Board of Immigration Appeal (BIA) decisions; namely, (i) the BIA eDecisions database which, however, cannot be searched using search terms because the records therein are not subject to the search mechanism, Optical Character Recognition ("OCR"), and, (ii) the BIA Decisions Portal database which can use search terms through OCR and be filtered by, among other things, the date at issue and the court in question to retrieve records. Add. 5. Since Defendant searched the BIA Decisions Portal, the *only* database containing *final* BIA decisions (as sought in the Request) that can be searched by key terms, the district court concluded that Defendant's search was conducted in good faith. Add. 8.

The district court rejected Plaintiff's counter argument that the search must be inadequate because he was in possession of a *final* BIA decision that was never produced, finding that the omission of a single record does not render a search inadequate. Add. 9. Further, the district court found Plaintiff's claim that Defendant should have searched its "data library" database because it has native Word versions of documents unlikely to suffer from the search errors associated with OCR, was equally off the mark since that database contains only "*draft*" BIA decisions and was, therefore, not responsive to his Request for "*final*" agency decisions. *Id*. Lastly, the district court rejected Plaintiff's quarrel with the way

3

Defendant maintains its file system and search capabilities, noting that FOIA does not require an agency to maintain its files in a way that facilitates a FOIA search. *Id.* Accordingly, on September 27, 2021, the district court found Defendant's search adequate and entered judgment in its favor. On November 26, 2021, Plaintiff appealed this decision. *See* RA 7.

## II.     STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of summary judgment in a FOIA case. *See Church of Scientology Int'l v. U.S. Dep't of Justice,* 30 F.3d 224, 248 (1st Cir. 1994).

## III.     ARGUMENT

### A.     Plaintiff Raises Arguments in this Appeal Not Previously Raised with the District Court and, thus, they are Waived

In his appeal, Plaintiff argues for the first time that Defendant's search was inadequate because it should have initially searched the "data library" database, reviewed all draft decisions encompassed in the Request's relevant time frame and, thereafter, searched the BIA Decisions Portal and compared the results of the search of the BIA Decisions Portal to ensure all responsive records were located. *See* Plaintiff's Brief, p. 24. This argument was never advanced by Plaintiff with the district court and cannot be raised for the first time in this venue. *See Sammartano v. Palmas Del Mar Props.*, 161 F.3d 96, 97 (1st Cir. 1998) (appeals courts can only consider the matter presented at the district court level, not new

4

facts or issues appellant wishes to present for the first time).

As discussed in greater detail below, assuming, *arguendo*, Plaintiff's argument was not waived, it fails to show inadequacy of search since his Request was for *final* BIA decisions, not *drafts* of decisions located in the "data library" database.[2]  Simply put, an agency is not obligated to search beyond the four corners of the FOIA request.  *See Sheridan v. Dep't of Navy,* 9 Fed. App'x 55, 56 (2d Cir. 2001); *Citizens for Responsibility and Ethics in Washington v. Dep't of Interior,* 503 F. Supp. 2d 88, 102 (D.D.C. 2007).

      B.    The District Court Did not Err in Finding that Defendant's Search was Adequate

Under FOIA, an agency need only show that it has "…made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce *the information requested*."  *Olesky v. U.S. Dep't of Defense*, 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (emphasis added).  If a search by an agency does not uncover responsive documents, it does not mean the search is inadequate.  *Id*. at 298.  In other words, the adequacy of an agency's search is determined not by whether relevant documents might exist, but whether

---

[2] Plaintiff has since served another FOIA request seeking drafts of BIA decisions from the same immigration courts during the same time frame and up to date of search.  *See Hawkinson v. Executive Office of Immigration Review*, No. 21-cv-11817-MPK.

the agency's search was reasonably calculated to discover the requested documents. 5 U.S.C.A. § 552; *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 254 (1st Cir. 2013), *cert. denied,* 134 S. Ct. 950 (2014). To show that an adequate search was conducted, an agency "may rely upon affidavits provided they are relatively detailed and non-conclusory and are submitted by responsible agency officials in good faith." *Maynard v. C.I.A.,* 986 F.2d 547, 559 (1st Cir. 1993). The agency's affidavit receives a "presumption of good faith" that cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." *Id.* at 550 (*citing SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The burden then shifts to the requester to provide evidence that the agency's search was inadequate. *Olesky*, 658 F. Supp. 2d at 294 (D. Mass. 2009).

On this backdrop, summary judgment in FOIA cases is routinely granted solely based on agency affidavits. *Crooker v. Tax Division of U.S Dep't of Justice*, 1995 WL 783236, at *10 (D. Mass. Nov. 11, 1995). In this regard, the agency must demonstrate that all relevant documents have been produced, cannot be located, or fall under an exemption to discharge its duty under the FOIA and be granted summary judgment. *Gillen v. IRS*, 980 F.2d 819, 821 (1st Cir. 1992). Summary judgment is only *in*appropriate when a review of the record raises *substantial* doubt of the adequacy of the agency's search. *Maynard*, 986 F.2d at

550 (*citing SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (emphasis added).  A court's evaluation of the adequacy component is deferential to the government.  There is no requirement that an agency search every record system, but instead the agency need only perform a good faith, reasonable search of *record systems likely to possess the requested information.  Stalcup v. C.I.A.*, 768 F.3d 65, 74 (1st Cir. 2014) (emphasis added).  *See also Brophy v. United States DoD*, 2006 WL 571901, at * 16 (D.D.C. Mar. 8, 2006) (*citing Blanton v. United States DOJ*, 182 F. Supp. 2d 81, 84 (D.D.C. 2002)).  Furthermore, an agency is not required to undertake a search that is so broad as to be unduly burdensome.  *Id.*  (*citing Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 2003)).  Even if an agency claims a FOIA exemption in error, that fact alone does not establish that the government's response lacked good faith, or that the search was inadequate, as the adequacy of a search focuses on the reasonableness of the agency's response, not whether that response was legally correct in every aspect.  5 U.S.C.A. § 552; *Moffat*, 716 F.3d at 255 (1st Cir. 2013).

As required, Defendant began its review and search based on the records sought in the Request; namely, *final* BIA decisions between the dates December 1, 2019, to November 16, 2020 (date of search) from the Boston and Hartford Immigration Courts.  *See Elgabrowney v. Central Intelligence Agency,* --- F. Supp. 3d ---, No. 17-cv-00066-TSC, 2020 WL 1451580, at * 9 (D.D.C. Mar. 25, 2020)

7

(plaintiff requested specific records and agency only obligated to search files reasonably likely to contain responsive records). Ms. O'Hara, Attorney Advisor and FOIA Program Manager for EOIR, determined that the BIA Decisions Portal was the proper database to search for responsive records as that was the *only* file system within EOIR that possessed *final* BIA decisions which that could be searched using the key terms requested by Plaintiff. Add. 36, ¶ 19. *See also Judicial Watch, Inc. v. U.S. Dep't of Justice,* 373 F. Supp. 3d 120, 127 (D.D.C. 2019) (generally, agency is in the best position to determine where documents responsive to a FOIA request most likely exist). This determination was based on Ms. O'Hara's knowledge and expertise as EOIR's FOIA Program Manager and her responsibilities in processing complex FOIA requests like Plaintiff's Request. Add. 36, ¶ 3.

On November 16, 2020, Ms. O'Hara personally conducted the search in the BIA Decisions Portal, using Plaintiff's key terms. This search resulted in 85 hits. Of these, only two (2) were from the Boston Immigration Court, and none were from the Hartford Immigration Court. *Id*. The two (2) BIA decisions were produced to Plaintiff.

In response, Plaintiff asserted that the search was "incomplete" since it did not include a decision that he had in his possession, and he argued the EOIR

should also search its "data library".³ *Id.,* ¶ 20. Ms. O'Hara explained that the "data library" stores only *draft* BIA decisions written by BIA staff. RA 123, ¶ 4. The documents in the "data library" are *not* official decisions, but pre-decisional and deliberative documents. RA 124, ¶ 4. On the other hand, *final* BIA unpublished or published decisions, are signed by at least one BIA Appellate Immigration Judge, and populated in two portals, the BIA eDecisions and BIA Decisions Portals, both of which can be searched with certain limitations. RA 125, ¶¶ 6, 7. Unlike the BIA Decisions Portal, the BIA eDecisions Portal cannot be searched by using key terms since it is limited to identifiers from CASE⁴; specifically, the Alien Number/Fine Number, Notice to Appear Date, Appeal Type, BIA Decision Type, IJ Code and Base City. RA 126, ¶ 8.

As with the BIA eDecisions Portal, the BIA Decisions Portal is populated through physically scanning the *final* BIA decisions in its shared drive using QR Codes and renaming them by Appeal Identifiers noted above. RA 126, ¶ 9. The BIA Decisions Portal stores the decisions in SharePoint and are subject to search through key terms using OCR. *Id*. Accordingly, Ms. O'Hara, using Plaintiff's

---

³ Generally, a FOIA requester is not entitled to specify which file an agency should search; rather, he is only entitled to any files reasonably likely to contain responsive records. *See Tunchez v. DOJ,* 715 F. Supp. 2d 49, 54 (D.D.C. 2010).

⁴ CASE is the abbreviation for Case Access Systems for EOIR, which is the electronic case manager for EOIR Immigration Courts, the BIA, and staff. RA 125, fn 4.

9

search terms, located two (2) BIA decisions from the Boston Immigration Court and produced these documents to Plaintiff. RA 127, ¶ 10. Defendant did not search the "data library" because the Request for *final* BIA decisions did not implicate a search of a portal possessing only *drafts* of BIA decisions. *Id.*

Considering the above, the district court correctly found that Defendant's search was conducted in good faith. Add. 10. *See also Stalcup,* 768 F.3d at 74 (1st Cir. 2014) (there is no requirement that an agency search every record system, but instead the agency need only perform a good faith, reasonable search of record systems likely to possess the requested information). In response, Plaintiff now asserts, that the O'Hara declarations were not made in good faith because, Plaintiff asserts, that Ms. O'Hara did not have familiarity with the "data library" until Plaintiff raised the issue in his opposition to Defendant's Motion for Summary Judgment and she did not have personal knowledge of the search process or EOIR's file system. *See* Plaintiff's Brief, p. 21. The facts, however, belie this contention.

Indeed, Ms. O'Hara is not only Attorney Advisor and EOIR's FOIA Program Manager, but she also routinely reviews and conducts searches of complex requests like this Request. Add. 36, ¶ 3. In fact, based on her expertise and knowledge of the file systems at EOIR, she personally conducted Defendant's search and determined that the *only* database that contained responsive *final* BIA

10

decisions sought by Plaintiff's Request that could be searched using the key terms provided by him was the BIA Decisions Portal. *Id.,* ¶ 19. Accordingly, a search of the "data library", which contains only *draft* decisions, was never implicated for search purposes, and thus, never mentioned in Ms. O'Hara's original declaration filed in support of Defendant's Motion for Summary Judgment. Simply put, Ms. O'Hara's declarations, which were detailed and non-conclusory, were made in good faith and in compliance with *Maynard,* 986 F.2d at 560 (1st Cir. 1993); *American Oversight,* 401 F. Supp. 3d at 26 (D.D.C. 2019) (rare is the case that compels a court to cast a skeptical eye on an agency's FOIA declaration).

In the end, as found by the district court, the fact that the Defendant's search did not hit on one particular document does not render its search inadequate.[5] *See Olesky,* 658 F. Supp. 2d at 298 (D. Mass. 2009) (if a search by an agency does not uncover a responsive document, it does not mean the search is inadequate). Stated differently, the adequacy of an agency's search is determined not by whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents.

---

[5] Plaintiff claims he is owed an explanation as to why this document was not located (*see* Plaintiff's Brief, p. 25), but FOIA requires no such obligation on an agency. *See, e.g., N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 161-62 (1975); *Hudgins v. IRS,* 620 F. Supp. 19, 21 (D.D.C. 1985) (FOIA does not require an agency to answer questions or create documents or opinions to an individual's request for information).

11

5 U.S.C. § 552; *Moffat,* 716 F.3d at 254 (1st Cir. 2013) *cert. denied,* 134 S. Ct. 950 (2014). At bottom, in light of Plaintiff's Request, EOIR conducted a more than reasonable search and produced the responsive records in full. *See Gillen,* 980 F.2d at 822 (1st Cir. 1992) (reasonableness of search is viewed in the context of the requested materials).

## IV. CONCLUSION

For the reasons set forth herein, this Court should grant Defendant's Motion for Summary Disposition and affirm the judgment of the district court granting summary judgment in favor of Defendant.[6]

                    Respectfully submitted,

                    RACHAEL S. ROLLINS
                    United States Attorney

By:  */s/ Michael Sady*
      Michael Sady
      Assistant U.S. Attorney
      U.S. Attorney's Office
      1 Courthouse Way, Suite 9200
      Boston, MA  02210
      (617) 748-3100
      michael.sady@usdoj.gov

---

[6] Should the Court determine that it cannot summarily dispose of this appeal, the government requests permission to file a responsive brief.

CERTIFICATE OF COMPLIANCE WITH
Rule 32(a)

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This motion for summary disposition complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the certificates of counsel, it contains 4,464 words (a motion for summary disposition may not exceed 5,200 words).

2. This motion for summary disposition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2016.

　　　　　　　　　　　　　　　　　　　*/s/ Michael Sady*
　　　　　　　　　　　　　　　　　　　Michael Sady
　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney

Date:  March 8, 2022

CERTIFICATE OF SERVICE

　　I, Michael Sady, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

　　　　　　　　　　　　　　　　　　　*/s/ Michael Sady*
　　　　　　　　　　　　　　　　　　　Michael Sady
　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney

Date:  March 8, 2022